UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| JOSEPH COLVIN, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 6:23-CV-122-CHB |
| ) | |
| v. ) | |
| ) | |
| GILLEY, Warden, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Respondent. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Federal inmate Joseph Colvin has filed a *pro se* petition for a writ of habeas corpus to challenge sanctions imposed upon him by a Disciplinary Hearing Officer ("DHO") at the Bureau of Prisons. [R. 1]  The Court must screen the petition pursuant to 28 U.S.C. § 2243. *Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011).[1]

Colvin's petition is very hard to follow because he omits basic facts about what happened and does not clearly articulate his claims.  Notably, this case represents Colvin's third attempt to challenge the DHO's decision in this Court.  *See Colvin v. Gilley*, No. 6:23-CV-30-CHB (E.D. Ky. 2023) ("*Colvin I*"); *Colvin v. Gilley*, No. 6:23-CV-61-CHB (E.D. Ky. 2023) ("*Colvin II*").  Those prior efforts were denied without prejudice on procedural grounds.  To flesh out the

---

[1]  A petition will be denied "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).  The Court evaluates Colvin's petition under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (per curiam) (noting that "allegations of a pro se habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)).

pertinent events and make sense of Colvin's diverse and sometimes conflicting factual assertions and legal claims, as well as to reach a substantive resolution of his petition, the Court takes judicial notice of information earlier provided by Colvin in those cases and refers to documents he previously provided but omitted in this case.[2]

On November 3, 2021, an Incident Report was issued after Colvin allegedly entered an officer station, grabbed a broom handle, and told Officer Denham that "you're gonna get your ass hit actin' like that." *See Colvin I*, R. 1-2 therein, p. 1. Colvin was charged with Threatening, a Prohibited Act Code 203 offense. *Ibid*. On November 23, 2021, DHO Gurley held a hearing on the charge. The DHO Report indicated that Colvin waived his right to a staff representative, and therefore represented himself at the hearing. *Colvin I*, R. 1-3 therein, p. 1. Noting that Colvin denied the charge, Gurley's Report included a "Summary of Inmate Statement" as follows:

> I began your DHO hearing by asking if you knew and understood your rights, and if you understood the nature of the charge against you. After you acknowledged to me that you understood my questions, I continued your hearing. I read aloud the charge C.O. Denham brought against you, and asked if you wanted to make a statement against the charge. You responded by providing the following voluntary statement, "I did say that on the phone.[3] I consider that me calling for help, not a

---

[2] A court may take judicial notice of undisputed information contained on government websites, *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009), including "proceedings in other courts of record." *Granader v. Pub. Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969); *see also United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites."). Such records and information on government websites are self-authenticating. *See* Fed. R. Evid. 902(5); *Qiu Yun Chen v. Holder*, 715 F.3d 207, 212 (7th Cir. 2013) ("A document posted on a government website is presumptively authentic if government sponsorship can be verified by visiting the website itself.").

[3] In the Incident Report, Officer Denham indicated that he had reviewed a recording of a phone call that Colvin made 40 minutes before he allegedly threatened the Denham. During that phone call, Colvin stated: "This dude [Denham]'s a fucking problem, I don't wanna fuck up by putting my fucking hands on him." *See Colvin I*, R. 1-2 therein, p. 1.

> threat. I deny this report. I didn't threaten Denham." You did not raise any issues or concerns with the discipline process up to this point. You did not request video review at any stage of the discipline process. The DHO noted that you voluntarily elected to waive your staff representative and witness. You voluntarily signed a statement on the BP-A0294 form; "Notice of Discipline Hearing Before the DHO" indicating your desire to proceed with the hearing.[4]

*Ibid*. The DHO report also indicated that Colvin waived the right to call witnesses. *Colvin I*, R. 1-4 therein, p. 1.

DHO Gurley found Colvin guilty of the charge. *Ibid*. The DHO Report noted that Colvin had refused to make any statement to the lieutenant who initially investigated the charge. Further, "at no point during the disciplinary process, did [Colvin] request video to be reviewed . . . [and Colvin] voluntarily elected to waive [a] staff representative and witness . . . [in writing]." *Colvin I*, R. 1-5 therein, p. 1. The DHO Report relayed that during the hearing Colvin admitted to making the incriminating statements on the telephone and to entering the officer station without approval, but denied grabbing a broom handle or threatening Officer Denham. *Ibid*. Weighing the conflicting evidence, the DHO noted that in the Incident Report Denham stated that Colvin had "been yelling at him and using profanity earlier that same day." The DHO also gave credence to the written statement of the only identified witness to these events - another BOP officer who was present and who corroborated Officer Denham's account of what

---

[4] The form, "Notice of Discipline Hearing Before the (DHO)," consists of a single page that:

   (1)   identifies the charges against the inmate;
   (2)   sets forth the hearing date and time;
   (3)   provides a box for the inmate to check whether he "(does) ☐ (does not) ☐ wish to have a staff representative"; and
   (4)   provides a box for the inmate to check whether he "(does) ☐ (does not) ☐ wish to have witnesses."

The form provides space for the inmate to provide the names of any requested witnesses and the topic of their anticipated testimony. A signature line for the inmate concludes the form. *See* https://www.bop.gov/policy/forms/BP_A0294.pdf (accessed July 19, 2023).

transpired.  The DHO also noted Colvin's in-hearing admission that he had a "beef" with Denham.  In the DHO Report, the DHO indicated that Colvin was told at the conclusion of the hearing that the charges were supported by the greater weight of the evidence.  The DHO later found Colvin guilty of the charge and imposed various sanctions, including the loss of 27 days of good conduct time.  *See Colvin I*, R. 1 therein, p. 2; R. 1-6 therein, p. 1.

Although the DHO told Colvin at the hearing that he was going to be found guilty of the charge, the DHO did not issue findings immediately.  One month after the hearing but before the DHO Report had issued, on December 28, 2021, Colvin filed a "sensitive" grievance with the Mid-Atlantic Regional Office ("MARO").  Colvin indicates it was not an appeal of the disciplinary sanction, as he had not yet received the DHO Report at that time.  *See* [R. 1, p. 7]; *Colvin I*, R. 1 therein, p. 2.  Instead, Colvin states that it related to alleged threats made by Denham and another officer.  *See* [R. 1-3, p. 1].  Nonetheless, Colvin states that MARO ultimately treated that grievance as an appeal of the DHO's subsequent decision.  *See Colvin II*, R. 1 therein, p. 7.  Procedural irregularities aside, the BOP's Central Office denied Colvin's appeal of the DHO decision and affirmed the sanctions imposed on September 9, 2022.  *See Colvin I*, R. 1-10 therein, p. 1.

The DHO Report was issued approximately ten weeks after the hearing, on February 3, 2022.  *See Colvin I*, R. 1-7 therein, p. 1.  The Report indicates that an officer delivered it to Colvin the same day.  *Ibid*.  Colvin denies that the DHO Report was provided to him at this time.  However, Colvin acknowledges that he was given a copy of the DHO Report after he filed an inmate grievance about not receiving it.  *See* [R. 1-3, p. 2]; *Colvin II*, R. 1 therein, p. 9; *Colvin I*, R. 1 therein, p. 2.

In his present petition, Colvin attacks his disciplinary conviction on numerous grounds. Colvin alleges that he did, in fact, have a staff representative before and during the hearing; that the representative "coerced" him into signing a form waiving unspecified rights just before the hearing by not disclosing its contents; and that the representative did not ask helpful questions during the hearing.[5] *See* [R. 1, p. 5; R. 1-3, p. 2]. Colvin also complains that a requested witness, whose identity and anticipated testimony he does not clearly provide, was not brought to the hearing. Colvin alleges that the witness's name was in the DHO Report. *See* [R. 1, p. 5; R. 1-3, p. 2].

The Court has thoroughly reviewed Colvin's petition and the documents he has filed in support of his claims, but will deny the petition. When a prisoner believes that he was deprived of sentence credits for good conduct without due process of law, he may invoke this Court's habeas corpus jurisdiction under 28 U.S.C. § 2241. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973). Before such credits are taken, due process requires that the inmate be given:

(1) written notice of the charges against the inmate at least 24 hours before the administrative hearing on the charges;

(2) a hearing before an impartial decision-maker;

(3) assistance from a staff member or competent inmate, if the inmate requests one and the inmate will likely be unable to present a defense because the inmate is illiterate or the case is too complex for the inmate to comprehend;

(4) the opportunity to call witnesses and present documentary evidence, if doing so would not jeopardize institutional safety or correctional goals; and

---

[5] In his earlier cases, Colvin also claimed that his staff representative did not conduct an adequate investigation, and alleged that there must have been exculpatory video footage of the incident but that his representative failed to present it. *See Colvin I*, R. 1 therein, pp. 6-7, 8; *Colvin II*, R. 1 therein, p. 5. He does not assert these claims in his present petition, and they would not have produced a different outcome if he had.

>   (5)  a written statement by the hearing officer explaining the evidence relied upon and the basis for the decision.

*Wolff v. McDonnell*, 418 U.S. 539, 564-70 (1974). Due process also requires the prison disciplinary board's decision to be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). Because the quantum of evidence required to meet that standard is minimal, the reviewing court need not re-examine the entire record, independently assess the credibility of witnesses, or weigh the evidence. Instead, it need only confirm that "there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Id*. at 454-55 (emphasis added); *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013). Evaluated under these standards, it is apparent that Colvin received all the process that he was due during the disciplinary proceedings.

First, Colvin's conclusory assertion that his execution of the "waiver" form was not knowing and voluntary fails to afford any basis for relief. Colvin does not allege facts indicating that anyone coerced him into signing the form, and the record indicates that he executed it knowingly. The one-page "Notice of Discipline Hearing Before the (DHO)" form is very simple and easy to understand. *See* note 4, *supra*. The form cannot be completed merely by signing it; the inmate must check one box to indicate whether or not he wishes the assistance of a staff member and check another box to indicate whether or not he requests that someone testify in his defense. Colvin's assertion that he did not know what he was signing is conclusively undermined by the simplicity of the form itself. *Cf. United States v. Ruiz*, 536 U.S. 622, 629-30 (2002). And Colvin's filings in this and prior cases establish that he is not illiterate. In any event, Colvin does not suggest that he inadvertently waived his right to the assistance of a staff representative. To the contrary he alleges that a staff representative was provided (notwithstanding record evidence indicating otherwise). Colvin does suggest that he

inadvertently waived the right to call a witness at the disciplinary hearing. As discussed below, even if this is correct Colvin's due process rights were not violated.

Second, Colvin complains that his staff representative did not represent him effectively. As a threshold matter, Colvin does not establish that he was *constitutionally* entitled to the assistance of a staff representative at all. BOP regulations provide that an inmate may request the assistance of a staff representative, but they do not require any particular degree of efficacy. *See* 28 C.F.R. § 541.8(d); BOP Program Statement 5270.09, Ch. 5 (Nov. 18, 2020). More fundamentally, the contours of the protections afforded by the Due Process Clause are defined by the Constitution, not federal regulations. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *United States v. Rutherford*, 555 F.3d 190, 192 (6th Cir. 2009) ("[T]he Constitution does not demand a bright-line rule whereby every breach of federal administrative policy also violates the Due Process Clause.").

As noted above, staff assistance is only required by the Due Process Clause if the inmate requests assistance and either "an illiterate inmate is involved" or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570. Colvin is not illiterate and the charge against him was not complex; indeed, the charge for Threatening arose from a single interaction and utterance lasting only a few moments. Colvin thus fails to establish entitlement to the assistance of a staff representative. *Cf. Jordan v. Wiley*, 411 F. App'x 201, 209 (10th Cir. 2011); *Weakley v. Shartle*, No. CV-14-02230-TUC- BGM, 2017 WL 4124910, at *11 (D. Ariz. Sept. 18, 2017) (denying relief where petitioner offered "no evidence to suggest that [he] 'is within the class of inmates entitled to advice or help from others in the course of a prison disciplinary hearing'"). Even if staff assistance was required, while a defendant at a criminal

trial is entitled to effective assistance from legal counsel, *Strickland v. Washington,* 466 U.S. 668 (1984), no such right attaches during informal prison disciplinary hearings. *Cf. Gorbey v. Warden Lewisburg USP*, No. 21-3081, 2022 WL 5422316, at *1 (3d Cir. Oct. 7, 2022); *Marino v. Masters*, Civil Action No. 1:12-00393, 2015 WL 66511, at *6 (S.D.W. Va. Jan. 5, 2015).

Colvin next complains that a desired witness was not called to present testimony. However, he offers conflicting indications whether he told the DHO during the hearing that he wished to call a witness. On the one hand Colvin suggests that the DHO knew that he wished to call a witness because the witness's name is referenced in the DHO Report. *See* [R. 1, p. 5]. But the DHO Report makes no mention of any witness by name, and the DHO repeatedly stated that Colvin did not wish to call any witnesses. *See Colvin I*, R. 1-3 therein, p. 1 ("The DHO noted that you voluntarily elected to waive your staff representative and witness."); *Colvin I*, R. 1-4 therein, p. 1. And Colvin fails to either identify the witness he wished to call or relay the substance of his expected testimony.

In an earlier petition, Colvin did provide an undated affidavit from inmate Montez Spradley. *See Colvin I*, R. 1-8 therein, p. 1. Colvin obtained Spradley's affidavit only after he had been convicted, *Colvin II*, R. 1 therein, p. 5, so it was not evidence the DHO considered. In his affidavit Spradley indicated that he walked with Colvin to the officer area so that Colvin could retrieve a broom to clean his cell. Spradley stated that Colvin did not enter the area without authorization because a guard opened the door for him, and that Colvin then grabbed the broom and dustpan he needed and left the office without conversing with anyone. According to Spradley, Officer Denham then came out of the office and started yelling at Colvin, who did not say or do anything threatening in return. *See Colvin I*, R. 1-8 therein, p. 1.

Even assuming that Colvin requested that Spradley's testimony be considered in his defense, the DHO's failure to do so did not violate his due process rights. To establish a due process violation, a habeas petitioner must demonstrate actual prejudice resulting from the deprivation alleged. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Colvin cannot demonstrate prejudice because Spradley's affidavit directly contradicts Colvin's own testimony to the DHO in several material respects. First, Spradley stated that he went with Colvin to the officer's station, but Colvin did not suggest that anyone accompanied him when he walked there to retrieve the broom. Second, while Spradley stated that Colvin was let into the officer station by another guard, during the DHO hearing Colvin admitted that he had entered the station without permission. Third, Spradley stated that Colvin did grab the broom and remove it from the station, whereas during the DHO hearing Colvin denied even touching the broom. *See Colvin I*, R. 1-5 therein, p. 1. Because Spradley's affidavit contradicts Colvin's hearing testimony in numerous respects, Colvin cannot demonstrate prejudice from the failure to consider it, especially in light of the highly deferential "some evidence" standard needed to sustain his disciplinary conviction. *Cf. Pittman v. Fox*, 766 F. App'x 705, 716 (10th Cir. 2019) (where due process infraction is shown by denial of staff representative and/or witness at disciplinary hearing, prisoner must still show resulting prejudice affecting the outcome of the proceeding) (citing *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 813 (10th Cir. 2007) (denying relief where testimony was improperly excluded but prisoner failed to demonstrate "how further testimony would have aided his defense")); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (even if hearing officer erred in not calling witnesses, it appears there was no prejudice because the testimony of the other inmates would not have changed the result of the proceeding).

Finally, Colvin complains that he did not actually receive the DHO Report on February 3, 2022, as reported on the form. However, Colvin admits that he later received a copy of the Report and does not suggest that the delay in receipt prevented him from appealing the DHO's decision. *See Colvin I*, R. 1 therein, p. 2; *Colvin II*, R. 1 therein, p. 9; [R. 1-3, p. 2]. Colvin does not identify any prejudice resulting from the delay and the record reveals none. Colvin therefore fails to establish viable grounds for habeas relief. *Cf. Staples v. Chester*, 370 F. App'x 925, 930 (10th Cir. 2010) (noting that "the DHO's failure to give an inmate a written copy of its decision within ten days should not entitle an inmate to habeas relief so long as the delay had no prejudicial effect on an administrative appeal").

For each of these reasons, Colvin's petition fails to establish grounds to grant habeas relief.

Accordingly, the Court **ORDERS** as follows:

1. Joseph Colvin's petition for a writ of habeas corpus **[R. 1]** is **DENIED**.

2. This action is **STRICKEN** from the Court's docket.

This the 20th day of July, 2023.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY